The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Gaines. You may proceed. Thank you. May I present the Court? My name is Keeden Brown Gaines and I'm counsel for the Appellant, Tijuana Decoster. The Court below dismissed the complaint for constructive discharge, hostile environment, and retaliation pursuant to Federal Rule of Civil Procedure 12B6. If the Court is well acquainted with the allegations of the complaint and with the Court's permission, I won't recite the allegations now, but rather discuss them when they're relevant to the argument. If I may, I'd like to begin with the constructive discharge claim, because I believe that this claim presents the opportunity for the Court to clarify or adopt an important aspect of the law. The law certainly allows a plaintiff to allege an environment that is so hostile that from a reasonable person's perspective they had no choice but to resign their position. And this is commonly referred to as the hostile environment plus or harassment plus type of case. This is the type of case that the majority of the law that the government relies upon cites in its brief. But the District Court noted in this case that harassment plus is not the only means by which a constructive discharge case can be brought. And I think the District Court was correct in noting that. They cited two, but just incorrectly applied, the Seventh Circuit's case, the EEOC versus the University of Chicago Hospital. I believe the Court should adopt the Seventh Circuit's determination of what can constitute constructive discharge. There, the Court, citing the standard that we're all familiar with, stated that when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated and the plaintiff resigns, the employer's conduct may amount to a constructive discharge, which is different from the harassment plus standard under constructive discharge. In other words, if an employee sees that their termination is imminent, that it's the writing on the wall or that the axe is soon to fall, the employee's resignation can give rise to a constructive discharge claim. It's not just the standard in the Seventh Circuit, but it's also been adopted by the Tenth Circuit and the Second Circuit. I believe I've cited the case law for those circuits in my brief. The Sixth Circuit and the Fifth Circuits have also weighed in in citing to the EEOC versus the University of Chicago Hospital case, and it has been relied upon with approval in the First Circuit. I also cited to the case of the First Circuit in my briefing. So Sixth Circuits have supported the idea that a termination that's imminent can give rise to a constructive discharge claim. The Eighth Circuit is actually the only circuit to speak negatively to the Seventh Circuit's ruling in the EEOC case. But even in that case, the court just simply said that if that standard, that if the termination, the writing on the wall could apply, that that plaintiff couldn't be successful. Can I ask you a question? So in this case, your client, I don't think it's undisputed that her superior, I think his name was, was it Murray? DeCoster, Mr. DeCoster. No, no, no, no, no. She was, he initially told her in August of 2019 that she, he was going to fire her. That's correct. All right. So, but she didn't resign until, I guess, under your argument, constructively, under constructive discharge wouldn't have been until January of 2020. That's correct. So how are you going to get around this imminent element that all the other circuits have held? Sure. Well, for one thing, him telling her that he was going to fire her isn't the only allegation that speaks to the constructive discharge. He gave her a letter of concern, and then he placed her on what's called an opportunity to demonstrate performance. It's commonly referred to in the government as an ODAP. And what happens in an ODAP is typically if you're unable to demonstrate performance within a certain period of time, you're terminated. And so there were many things that were moving her towards termination up until January. In December, in addition to placing her on the ODAP, she had arranged, as alleged, to go on a detail to another office to get from under his supervision. And at the time, in December, she had been approved to go on to the detail. But then in December, her supervisor told her that that detail would be terminable, which meant that she wouldn't be able to return from the detail. After she went to the detail, once the detail concluded, she would be fired at that time. And so it was this conversion of events that really kind of came to a culmination in December that led to her January resignation. She was placed on the ODAP. If she tried to get away from it to go to the detail, she was told that she would be terminated after the detail. So imminent, meaning that it's soon to come, I think the court is just trying to distinguish that it has to be pretty clear. How long was the detail? The detail was supposed to be for a year. I think the court is saying that it just has to be pretty clear that termination is ultimately going to be what is resulting from the conduct of the employer. And I think in that case, the allegations support that it was pretty clear. It wouldn't do. Am I right? Was she told that dropping the EEOC claim was part of it also being able to go? Was she told that to that job? That's correct, Your Honor. That's a very important part in your case. For the retaliation claim, absolutely. Not just retaliation, but for constructive. Sure, sure, yes. I understand. He was telling her that, yes. The point is, my good colleagues would question you about the termination in terms of imminent, but it was in December, right, You can't go to this temporary assignment unless you drop the EEOC, is that correct or not? You got it correct, Your Honor. And that was in December, right? That's correct. So she left a month later, right? That's correct. Right. So it's not just, is that correct? That's correct. And that doesn't, why do you think that just applies to retaliation? Isn't that constructive in a sense? Sure, I think that's a fact. I think all of those facts go into showing, or at least the allegations, that it's a fact. It goes into showing that the termination was imminent. It's just that I don't think you can get much brighter in retaliation than saying drop your EEOC or I'm going to do something negative to you. I don't think you can get better than constructive either. Why? If someone tells you, I mean, who's going to bring a racial discrimination claim on the EEOC other than a person of color? You won't. Or can, right? You won't get any argument from me, Your Honor. Is that right or not? I mean, that's correct. Would that be reasonably related to your race in terms of dropping that EEOC claim? Yes, yes. And there are a lot of factors that also relate to her race as well. I understand that the government raised the fact that she didn't tie. Help me understand a little bit. Maybe I'm not following precisely. So I certainly understand the retaliation claim, and I want to talk about that because that's an interesting one. But I'm not sure I understand your argument. I don't think you've made it before, but that the discharge, the constructive discharge arises from the retaliation? Help me understand why that is. Well, I think what Judge Gregory is pointing out and what I agree with is that in going to the eminent factor, I mean, he's basically telling her that if you don't drop your claim, I'm going to take a negative action against you, which is basically... But not a discharge, but not fire you. Well, yes. In a way, yes, because he's sending her to this detail that up until that moment had just been a regular detail under the government. You go to the detail. You get some new experience. You return to your position, your duty position. He told her that it's not going to be a regular detail. If you don't drop your EEO claim, I'm going to send you on a terminal detail, which means that once the detail is concluded, you can't come back. You're fired. You're separated from the government. A year from now? Yes, a year from now. But it was clear at that moment that if she went on that detail, it's an agreement that you're going to stop working. It's basically a termination because you're not going to be able to come back from that detail under any circumstances, as it's alleged that the supervisor relayed it. And so what happened... He was tied to dropping the EEOC claim, was he not? Yes, he definitely tied it to dropping the EEOC claim. I think that's what makes this case unique, and it says normally you have to allow retaliation because people don't normally say things outright. You have to drop your EEOC claim, but here it did. So it can be both. Agreed. Right. Agreed, and that's why the agency actually found the supervisor liable for retaliation. With retaliation, you've got a problem. You've got a problem because I think your client says you didn't bring the whole thing. You've got to bring the... Well, you'll get around that. I mean, you don't have to talk about that, but the fact that you're just leaving just more damage is a problem. But do you have to really rely upon that in these unique situations? Because most people don't say outright that you have to drop the EEOC claim. Well, it's one of the few times since I've been practicing in the last 25 years that someone has been so forthright in their statement with respect to retaliation. But I'm happy to address the retaliation quickly, and then I can come back to constructive discharge. Well, I think Judge Richardson is probably going to have some questions, and Judge Benjamin on that, too. So you argue your case the way you want to argue, but the point is I don't want you to leave constructive discharge because most people rely on retaliation because they don't have somebody saying kind of like in your face, drop your EEOC claim or. And so therefore, you have to generally look at that. And therefore, otherwise, constructive would have to be based on making a claim for harassment or hostile work environment on the harassment forklift. But you don't necessarily need that for constructive if someone tells you, and that's on steroids to me. No, the thing, the statute or the agency's position to help and address racial and sexual discrimination and religious discrimination, you have to drop that. That's incredible. That's about as constructive as you can get. Well, it's amazing that we're here, you know, given that. It's constructive, but I guess I'm not understanding why that's constructive discharge. It's constructively bad. It's constructive discrimination. I get all that, but I don't understand why it's effectively firing her, right? It's not just constructive in general, right? The question is, have you alleged, I mean, I know we're now past what you alleged, but have you alleged constructive discharge? I don't have any doubt you've alleged retaliation, right, and that that itself is bad. However we want to define that. The question is, is that statement the effect of firing you? Well, if I may, Your Honor, let me bring us back to the procedural posture of this case, which was on a motion to dismiss. And so perhaps reasonable minds could differ as to whether going on a terminal detail that says you're going to be fired at the end of it is sufficiently eminent under the standard. But at a motion to dismiss, we're just looking at the allegations of the complaint. And I think where reasonable minds differ, then we're going to the province of the jury. The court's duty here was to look at the allegations and ask itself, could this suffice as constructive discharge under the Iqbal or Twombly standard? Could this state a claim? And I think if this court were to clearly define that what the Seventh Circuit has said, that termination is eminent or the writing is on the wall, because I think if you're told you're going to go on a terminal detail, the writing is on the wall, that that could also constitute constructive discharge. And then, of course, we're not just talking about the terminal detail. We're also looking at the fact that she's alleged that she was placed on this ODAP as well, and he told her he was going to fire her. So a jury gets to look at all these facts together and make the determination as to whether or not her termination was eminent. But at this stage in the case, the judge was just supposed to look at the allegations and say, is this enough? And I think the district court actually correctly looked at the Seventh Circuit and said, you know, we don't have to go with this hostile environment plus or harassment. We can look at whether she was just going to be terminated. Was the ax about to drop? But don't you also, I think, in looking at the complaint, is also an allegation, it sounds like this guy was just threatened and determined, that in January 2020, I think, before she resigned, where Finkenstein told DaCosta that if her Asian colleague says she can work with DaCosta, then she can remain employed? That's correct. So that's odd, certainly. I guess in terms of eminent, so I guess does that depend on if the Asian, and they don't state a name, the name is not stated. So Asian colleague says she can work with DaCosta, then he would consider allowing her to remain employed. So that's conditioned upon what the Asian colleague, so if the Asian colleague says no, I don't want to work with DaCosta, then once again he's saying you're going to be unemployed. That's correct, Your Honor. Okay. I think that fact also supports it. And then to go a little bit further, we don't even get to. Why is that? Because then it's not eminent. I mean, I get it's a little odd, right? I'm not fighting that. But, again, it's just whether it's a constructive discharge. And the challenge I've got there is just saying if your co-worker says that she can work with you, I don't know whether it says he or she, but if this other co-worker says that they can work with you, then you'll be able to work. And if not, you won't be. But that's not a constructive discharge. That just says you've got to get like a thumbs up from your co-worker. Now, that might not be good business, but I don't know why that's a discharge. I'm about to run out of time. Is it okay to respond? Yes, you can. I think that that is also an allegation that supports the constructive discharge because, first of all, her Asian counterpart, who was outside of her protected class and treated more favorably than she had been over these last seven months, was not her supervisor. It was out of the ordinary for this woman to have any say in whether she's fired or not. So he's basically saying, I'm going to fire you unless this woman says otherwise. It's, again, telling her, I'm going to fire you. I'm just saying, I'm delegating that authority as to whether you work here, in a sense, to somebody else. I guess I just don't understand why that might be odd. We might not want the government to operate in that manner. We might not want the supervisor to be a supervisor. I get all of that. But what I don't understand is why saying that, like this conditional, if your coworker says that they are able to work with you, then you can stay, doesn't seem like an imminent firing. It's a conditional question. It's like an ODAP. If you improve, you can stay. If you don't improve, you can't. Whatever this imminent standard is, what you have here doesn't seem to me to be imminent. Well, Your Honor, we don't look at each allegation in a vacuum. We're supposed to, at the pleading stage, take all of the allegations and the light most favorable to the plaintiff. And if we do that, we're not just looking at that statement by itself. We're looking at this trend. We're looking at, I'm going to fire you. We're looking at, I'm putting you on a letter of concern. We're looking at, I'm going to put you on an ODAP, which is going to end in your termination, or I'm going to send you on a terminal detail if you don't drop your EEOC case, or, hey, you're still fired in January unless this Asian counterpart, who isn't your supervisor, tells me that I shouldn't. So all of those things together are enough at the pleading stage to state a claim of constructive discharge if the court's going to go with the termination is imminent, the writing's on the wall, the ax is about to drop. I don't know how you divorce all of those allegations from the standard that the ax is about to drop. They all support that, at least at the pleading stage, Your Honor. Now, the jury may feel like you feel at the end of the day and may not believe that that meant that it was imminent, but it's for the province of the jury, and the district court cut us off before we could get there. Sure. May I have just a moment? Do you agree, I want to switch to the retaliation claim for a little bit just to make sure I understand the framework that we've got. Do you agree that if you go forward with the retaliation claim in federal court that you have to prove both liability and damages? Yes. And that if you do that, that your client forgoes the $60,000 award that the agency provided? Yes. You're starting over. All right, so I guess the question then that I've got is why would I not read the district court's order, which is pretty clear, that says you have to make this election or otherwise I'm going to dismiss it, and then you come back and say I request a trial concerning damages, something you now agree could not be provided. Why the district court in its sort of broad discretion to manage its docket can't say I asked you to tell me, you told me the opposite, you're dismissed? Respect the judge, but it was a weird question because if we step back into the full context, we're looking at the complaint, which fully alleges a retaliation claim. It doesn't say I just want damages on retaliation. It doesn't even mention what happened at the administrative level. The complaint alleges a claim of retaliation. But then you come back and make it different in response to the motion dismissed, you make it an argument that says no, no, this isn't about the liability, this is just about damages. You know, if the allegation is the district court's not allowed to ask, it might not be required to ask, but if your argument is the district court is not allowed to ask, that seems like a pretty high bar when we've got a rule that says it's got to be both or neither. Well, the district court can ask me whatever the district court wants to ask. Can it then rely on your answer? Well, I just misunderstood the question. The district court asked if I'm putting retaliation in issue, which was an odd question to me given that the complaint alleged fully retaliation. So I thought the district court was asking, based on the administrative record, are you saying that she wants to reassert her retaliation claim and why? And so because she won retaliation at the level, I thought the district court was just curious as to if she won at the administrative level while she was coming here. It's a little hard to say, I don't want to belabor this, but it's a little hard to say you thought the court was curious because the court said, if you don't, I will dismiss the retaliation count. I mean, the order is, I think, sort of crystal clear. If you don't say that you want to put liability at issue, I will dismiss. This isn't a curiosity question. I'm not saying I would have done it like the district court. I'm not endorsing this approach. But we give district courts a lot of leeway to manage their own docket and to control cases in the manner in which they are put forward. And if they ask a question that seems pretty clear to me and you give what seems to me to be a pretty clear answer, it then did exactly what it said it was going to do when you gave that answer. That's the challenge I'm having. Let me make two points, Your Honor. Thank you. Perhaps I should have said at the beginning, why are you asking this question? I don't understand it. Maybe we should have a hearing. I honestly thought that the district court was saying, if she already won retaliation, are you putting that at issue again? I'm just honestly saying that she agrees with what the court said. That's fine. She probably didn't. I'm sorry. I'm looking at the district court's order. It says, informing the court whether she agrees to have the administrative agency's determination on retaliation placed at issue in this litigation. Under Title VII, in the judicial proceeding, the agency's determination, because this is being reviewed to know it, is not relevant. I mean, that's kind of my point of the confusion, and that's my second point. I think on a 12B6 motion that the government filed, the district court has to look at the complaint, not the answer to that question. When you look at the complaint, there's a full retaliation claim alleged. When the district court asked, based on the administrative record, is she putting this at issue, I actually thought he was wondering why she was bringing this case to NOVA when she won at the administrative level. And I'm just answering she agrees that it was retaliation, but she didn't think the damages were appropriate. This question would have you think that he's asking her, the way it's drafted, are you appealing the agency's decision? And this isn't an appeal. This is de novo. He's saying whether she agrees to have the administrative agency's determination on retaliation placed at issue in this litigation. I just don't understand how that's relevant, and definitely not for a 12B6 when the only thing that we need to look at is the face of the complaint. I agree with you completely, Your Honor. It's not relevant, and probably I should have called the judge's chambers and maybe asked for clarification. What do you mean? What are you saying? What do you want? I'm just letting him know just candidly she did agree, but she doesn't like her damages. That's why she's going de novo. She wants to try the whole thing again because she didn't like her damages. She's bringing her constructive discharge claim, which the agency dismissed, and she wants to bring her hostile environment claim, which the agency dismissed. So I think I'm answering the question. I didn't see any grounds for dismissal because, again, if we're looking at the complaint under 12B6, it states a claim of retaliation under the requirements under the law of the circuit. It alleges what a plaintiff must allege, protected activity, adverse action, and damages, essentially. And so I was confused. I'm sorry. I don't think it matters here. Thank you, Ms. Gaines. Mr. Haven. Good morning, your honors. May it please the court. My name is Matt Haven. I represent the United States, the appellee in this case. This court should affirm the district court's ruling for three reasons. First, Ms. DeCoster failed to plausibly allege that her employer mistreated her at work because of or due to her race. And that is dispositive of both counts 1 and 2, constructive discharge and hostile work environment. Second, Ms. DeCoster's allegations are not severe enough, as a matter of law, to meet the high bar set for a hostile work environment claim and an even higher bar for constructive discharge. And third, the district court was correct when it dismissed Ms. DeCoster's retaliation claim because she failed to put the entirety of that claim at issue and she cannot now take the opposite position upon appeal. Since we started with the... Sorry, just because your colleague ended with this point and I want to make sure I get your response before I forget about it. I'm not trying to put words in her mouth, but let me just say, hypothetically, imagine that the argument says, listen, if the district court was crystal clear as to what it was asking, that might well be permissible, right? And we can envision what that is. And the court says, listen, either you get the administrative damages or you can go full bore here,  Tell me which one you're doing. If they chose whichever one the court dismisses, that seems fine. But instead, what we have is not a model of clarity. And as she, I think, fairly points out, labor says the question, you must put at issue the agency's discrimination, right? So that's the underlying discrimination. But instead, what the district court asks is, is the agency's determination of retaliation at issue, right? And so had the court actually said what the standard was, right? That is the agency's retaliation at issue. Then that seems like a clear question. The agency's determination seems to ask the wrong question. And so maybe we shouldn't be surprised that we got a confused answer. I think what Judge Chuang was talking about was clearly count three, and it's made clear through briefing that we're talking about count three, which is the retaliation claim. No, no, that's totally fair. But the point is, he asked the question of, is the determination at issue, right? But that's not what labor says. What labor says is whether the retaliation is at issue, right? So the quote from labor is not whether the determination is at issue, right? The whole point is it's not at issue. The point is, is the retaliation at issue? And JA 96, it seems like the judge is asking the wrong question. No, but it's most certainly not one and the same, right? Because if the retaliation is at issue, then we're having a trial about whether this guy retaliated against the plaintiff, right? And that's a full discussion. We can discuss that. If the determination is at issue, then we're talking about res judicata or some other question about the standard of what we're looking at. That's plainly not what's at play, right? Do you understand what I'm getting at? If the judge had asked the right question and gotten a sort of non-responsive answer, I totally get you. But I'm not sure what the question is. I asked her the other way, but I'm trying to ask you this direction. Why do I understand the question to be a correct one such that I think the district court could rely on the answer in the manner that you've suggested? I think because Judge Schwong clearly explains in his opinion, and we're looking at JA 094, what the import of labor versus Harvey is, that Fourth Circuit case. And it's clear that there's two things that the plaintiff needs to put at issue. He needs to put the merits at issue, and he needs to put the damages at issue. But if you look at the complaint, she did. There's nothing, if you look at the complaint on page 6, where it says, count three, retaliation, she alleges, it says nothing about the agency's determination. It says she alleges retaliation. She sets out the same claims, and I'm assuming she did at the agency level, that she suffered irreparable harm, that he threatened to terminate her if she didn't drop the EEO complaint. So we're here on a 12B6 motion. And under Twombly and Iqbal, why does he even have to ask the question? Because plaintiff's counsel, appellant's counsel put it at issue in her own brief. But once again, we're on a 12B6. We don't look at the briefs, which is interesting. We don't look at the briefs. We're looking at the four corners of the complaint. And if we look at the four corners of the complaint, she looks like has a plausible claim for retaliation. And the interesting thing is, even in her retaliation claim, it doesn't even mention the agency's determination. So I guess that's where the confusion is, because I'm not even sure the judge had to ask a question. Because if we're just looking at the complaint, and not looking at the briefs and opposition, or pursuant to Twombly and Iqbal, then it looks like she has a plausible claim to me on count three. I think I have two responses, Your Honor. The first point is a point Judge Richardson was getting at before, is that the district judge, trial judges, need to rely on counsel to describe their own complaints. So this is not a situation where the defendant, normally where circuit courts have issues, is the defendant goes outside the pleadings. The defendant raises something it should not raise. Court relies on that, that's an error. That's not what happened here. What happened here is plaintiff says something in their own briefing, describing their own claim. And a district court, just like an oral argument or in briefing, needs to be able to rely on counsel for the respective parties to accurately describe their own position. Mr. Haven, what part of the complaint was withdrawn? Withdrawn, I'm sorry. None. I think that gets the other important point as well. Judge Schwong is also aware, as in all of these... The important point is that it's still before the court. I don't think that helps you. It's still, none of it was withdrawn. All the issues, retaliation, everything, as Judge Benjamin was questioning you about, none of it was withdrawn. And I think we still use the four corners of the complaint to determine the merits of whether or not it was a valid 12B6, right? That's right. I just think it sets a dangerous precedent if a judge is not able to rely on counsel's own explanation of their own complaint. And I think this is another important point for the court to consider. In all federal employee Title VII cases, a lot happens below before we get to the district court level. There's all kinds of allegations made, all kinds of charges leveled. In this case, and as was made clear during briefing, Mr. Koster actually alleged four retaliation claims. Four. Judge Schwong is well aware of that when he sees this case. He sees four retaliation claims and what's happening in briefing and what's happening in the request he has afterwards is we're trying to figure out what's here. Which of these four are here? If I accept that, right? Whether we talk about it under an abandonment theory or we talk about it, a district judge surely has some authority to ask questions and get answers and rely upon them. The question I've got is don't we require a little bit of clarity? Just as an example, if we've got three Fourth Circuit judges who read the question and we can't understand precisely what it's asking, maybe that's not sufficiently clear for the district court to rely upon? If the district court was clear, I totally understand your point. But if we've got confusion about what the court was asking the plaintiff to say, that to me is the... Maybe you can't do it at all. Maybe a judge can't ask at all. That would be one theory. But even if you think the judge can do it, the judge has to ask a question that makes sense that is answerable in a clear way in order to dismiss the complaint. I think that's fair. And I think that the theory that a judge wouldn't be able to ask is not a plausible theory because I analogize it to oral argument. The judge is able to ask questions on oral argument. Parties are able to clarify their positions, give responses. I think this is kind of the same idea. This just happens to be in writing. I think my response to the lack of clarity of the position that is unclear, I think if you look at the context of the entire opinion and you read JA 094, which is the one page that Judge Schwong treats retaliation, labor versus Harvey is clear. And I think when you look at the entirety of that part of the opinion, it's clear what he's asking. I understand the court's point about that one word, and I'm not sure we're going to see eye to eye on that one, but that's the position. In the context of the entire opinion, it's clear what Judge Schwong is asking is, are you putting this whole thing at issue, or do you only want a trial on damages? But he uses the word, I think the problem is that maybe that's what Judge Richards, is the word determination. It almost seems as if it puts her in a position to say I have to either reject the determination that, the retaliation determination, I'm not talking about the money, reject the determination that the finding that there was retaliation in order to proceed, or I have to, or the way it reads, and I think it reads in JA 094 and 096, that if I don't, the only way that I can move forward is rejecting the determination of the agency. That's the way it reads to me, is that she would have to reject the determination where the agency said, and I'm not sure why she would do that, and I'm not sure she has to reject the determination. She does because the claim has to become de novo. So what's happening in briefing, what her response to Judge Schwong's order is saying is I don't want to put this whole claim at issue. I'm good with the determination. I like that the EEOC found for me on retaliation. I don't want to disturb that. I want more damages. That's what she tells Judge Schwong. So that's how I see it as one and the same. I understand that the one word that Judge Schwong used could have been better. I can acknowledge that, but I think what's clear is that what he's asking is, are you okay, almost in a way doing a favor, are you okay, you won $60,000, you won $50,000 in attorney's fees, are you okay forgoing all of that? Because that is what's required for her Is one way to think about this that we will permit a plaintiff to abandon a theory that's set forward in the complaint, but we do so only where it's clear that that's what we're doing. We don't allow inadvertent abandonment, knowing an intelligent waiver. We talk about that in the plea context. It's not that you can't abandon a theory. Clearly a lawyer can't abandon a theory in argument or briefing, but we don't do so unless there's some clarity to it. I think that's fair. I know you wanted to talk about the other two points. I want to just follow up on that. You cited J894. He says because the complaint does not allege that the finding of this court, there is no present deficiency in the complaint and the court will deny the motion without prejudice. But then he says if the COSTA acknowledges that the agency's determination on the issue of retaliation is now at issue in this case, she may proceed with her retaliation. Once again, he's saying she has to acknowledge that she has an issue with the agency's determination. I don't think that's what LaBear says. It's not that she has to acknowledge that there's an issue with the agency's determination. She just has to forego her win below. That's what Judge Schwong is telling her. She can't keep her win and then seek more damages. She needs to start again. That's what LaBear says. You can't come in here with this liability theory and ask for damages on the liability. But that's not how it's phrased in the order. I can see where the confusion stems from the way she briefed it, but I can see where the confusion in the order and the question that we get on JA 96, the order, and why there may have been some confusion in the answer. I understand the court's position. We believe Judge Schwong was clear that there were two options. You either issue or don't. Keep your damages or start anew. That's the position. I understand the court's slow. I want to get back to the constructive discharge claim. I think that was an important discussion as well. I don't want the court to miss the point that in order to state a constructive discharge claim, there are multiple elements. Race has to be one of them, or some other protected class. But in this case, race is the element that was alleged by Ms. DaCosta. There has to be some connection, some plausible connection in the complaint between the alleged misconduct of the supervisor and race. In this case, you simply don't have any plausible allegations. You don't think filing an EEOC complaint on the basis of race is related to race? It is, Your Honor. That's the whole person. You have to drop your EEOC claim. That's why it's put together. The point is this. It's like Venn diagramming. All retaliation is not constructive, but a constructive discharge can be involved in retaliation. Would you agree with that? My point is this. Can't you retaliate against someone through the medium of constructive discharge? Retaliation. I'm doing this because you have done something. Can't that be through constructive discharge? Some retaliation is I'm going to make your job harder for you. I'm going to lower your salary. I'm going to do these things. All retaliation. But retaliation simply means that which is done in order to punish for something else that person did. You won't drop your EEOC complaint. And I come up with a constructive discharge situation. That can be retaliation, can't it? It can be, but I think it's two separate issues. The issue that I'm raising is there's no connection to race here. In addition, the question that your court is asking... I know you are, but I'm asking you. You don't think it's connected? For example, can a person, a non-person of color, bring a racial discrimination? Yes? Right? It can be. And if you are told you need to drop this because you brought a discrimination claim on your race. That's not related to race. There's no plausible allegation it is in this case, Your Honor. If Dr. Finkelstein, the supervisor... It doesn't have to be. He introduced it. Do you deny he said that about the EEOC claim? I don't have a position on that because... You don't have a position on it? Not at this time, Your Honor, because I have to accept it as true. So at this stage, we have to accept it as true. So your position is that it's true, right? It has to be. I have to accept it as true. So you don't think that's related to race? I don't. Why not? Because there's no allegation that there is a connection to race. Just because a boss asks you to drop your retaliation claim or your discrimination claim, there's nothing suggesting Dr. Finkelstein says you have to drop this because you're black. I don't like... I don't understand. There are all different kinds of EEO claims, Your Honor. People not of color can bring them. They can be based on gender. They can be based on retaliation. They can be based on reporting somebody else, right? So you could be retaliated against for reporting discrimination against somebody else, right? If I observed it and I report it to EEOC and then they retaliate against me... We see these cases from time to time where you're reporting a violation and they're retaliating against me for whistleblowing even though I'm not the subject of that discrimination. I agree with that, but is that this case? This case has all different kinds of allegations. No, no, no. What Judge Richardson just told you is accurate. It could be a case where someone is bringing it because they're not the person who's the object of discrimination. Someone else is, but that's not this case. You don't disagree that she's an African American, right? That's correct. And you don't disagree that she brought it on the basis that she was discriminated because of her race, do you? There were multiple. That was one. There are a lot of things, but that was one of them, right? One of them. And at this point, you can't disagree with the fact that he told her if you don't drop that claim that you were racially discriminated against, there are consequences. You have to accept that, right? Correct. And you say that's not related to her race. It doesn't show that the adverse actions taken against her have anything to do with her race. It doesn't show that she was placed on an ODAP or that the letter of expectation was because she was black. I'm talking about an EOC claim now. Not everything has to be. But don't you think that would... I know you represent your client. No, you represent me. Because you represent the United States. Our nation. And wouldn't you say that that's one of the most offensive ways to look at it? I'm going to do this to you because you avail yourself of that which was designed and put together to protect you from this. That's probably the most insidious one I could think of. And that's likely why she prevailed below your honor on the retaliation claim which is different than the constructive discharge claim. No, well, I don't necessarily think that's true. But I see your position. But I think it can be both. It's also rare because rarely do you have a case like that that somebody would, at least at this point where this is true, like you said, would come up and just tell you that. It may be in your window, but to say, you know what, drop the EOC complaint or... Don't you think that's highly offensive? Offensive? Offensive in terms of offending the whole idea of what is protecting. That's what retaliation claims are for, yes. Yeah, I mean, so a woman comes and she's been harassed and you drop your EOC complaint, then you can continue to work here if you don't. I mean, this is a hypothetical. Don't you think that's pretty horrible, isn't it? That's not the allegation here, but yes. I said it was a counterfactual. Yes, yes, yes. And it's no less because it's racist. I'm not sure I understand it. You don't need to be a person of color to bring that kind of claim. You can be a person of any color to bring that kind of claim. If your boss tells you, I'm retaliating against you, you drop this complaint, it doesn't matter what color you are. That's a claim. But not constructive discharge. Correct. Constructive discharge is a very high bar. I think I may have run it over time. If you're answering questions, you can keep going. Constructive discharge is a much higher bar. You know why it's a higher bar? Because normally we would have to find there are other reasons that you do it. But it makes it a lot easier in a case like this where they say, it's based on your not dropping your EOC claim. That's why it's a high bar. You're right. Because you don't normally have cases like this, perhaps. I just want to be clear about what the allegations and the complaint are. It's not that Ms. DaCosta dropped her EEO complaint or she's fired. It's drop your EEO complaint or you cannot go on this detail. So it's not connected to the termination. I think it's a really important point. And if you don't go on the detail, you're going to be fired. No. You're still subject to the ODEP. So that's what's going on in the background. She has two choices, Ms. DaCosta. She can stay and demonstrate her acceptable performance. Or she can go on the detail. What Dr. Finkelstein told her, the allegation is, that if you want to go on this detail, you need to drop your EEO complaint. She's not forced to go on the detail. Let me just ask because she brought this up. On the terminal detail, her argument is, I think it's what she was trying to explain to, was saying to Judge Richardson, is that if I take the terminal detail, that at the end of the year, I'm done. Right? Yes. Is that correct? That's my understanding of what a terminal detail means. I think the important point there is that Ms. DaCosta was not forced to take that detail. It was a choice. And this other part of the choice was in January of 2020, that if your Asian counterpart, I don't see the name, if your Asian counterpart agrees to work with you, then I won't terminate you. Right. So, all of those are conditioned, this termination is conditioned upon it's either terminal, or if the Asian counterpart says, so if the Asian counterpart says I don't want to work with her, from her perspective, then I'm going to be terminated. But that allegation is not in the complaint, so it can't be imminent then. If she had alleged that she spoke with this Asian counterpart, Asian counterpart says, I'm not going to defend you, goodbye. No, not the Asian counterpart, but the allegation regarding in January 2020 that he had this conversation with her. Yes. What I'm trying to say is there's no certainty as to how that conversation will play out. That needs to be alleged in the complaint. If we're talking about imminence, we don't know what the result of that conversation is going to be. We also don't know the results of the ODAP, which is still pending. She still has an opportunity to demonstrate her performance is good enough. The Code of Federal Regulations, which we cite in our briefs, give her 60 days, and then if there's a proposed termination, which is not the only outcome, there are multiple outcomes of an ODAP, her performance could have been fine. That's one of the possible outcomes. For purposes of a 12B6, stating a plausible claim, she's saying that I was constructively discharged. Because he told me in August of 2019 that he was going to fire me. I probably agree with you that he puts her on an ODAP, so that's probably not imminent. But she's making this argument of the totality, looking at the totality of the circumstances. Then in December of 2019, he tells her about this terminal. If you drop your EEO complaint, I'll give you this terminal assignment. And then in January of 2020, he comes back again and says, well, you can either do this one or the other. You're going to be released in a year. In January of 2020, if this counterpart says that she'll work with you, then I will allow you to continue to work. Then she quits on February 7 of 2020. Her argument is, if you look at the totality of the circumstances, that it was imminent that I was going to get fired. I think the Fourth Circuit case law and also the Seventh Circuit case law that she cites says the opposite. All of those things can be considered. I know it's not published, but that case speaks directly to the allegations. The factual allegations were the same as here, if not more severe. It was what Mr. Koster is alleging, plus the employer took steps to negatively affect the plaintiff's visa status, which I can't imagine anything more severe than that. So Ofichie directly addresses all of the allegations in Mr. Koster's complaint and says that's not good enough. I think Honor v. Booz Allen, 383 F. 3rd, 180 is another good case for the court to look at. I think the other two good cases for the court to look at, and this brings me to the point about this new imminent law that Ms. DeKoster's counsel was talking about, there's two important opinions from the Seventh Circuit. That's the EEOC v. University of Chicago Hospitals, and also, I'm not going to get the name right, but I think it's Seigan, C-I-G-A-N v. Chippewa Falls. They're both cited, and I think in those cases, I think Judge Easterbrook in the second case, Seigan, does a very nice job explaining what is enough, what is enough under this imminence theory, and I think he's very clear that there's not a new theory here. For constructive discharge, objective intolerability remains the standard even in the Seventh Circuit. It has to be. The Supreme Court's told us objective intolerability. Now, there might be other ways to show objective intolerability, but the real question we have is whether it is so objectively intolerable that any reasonable employee faced with these two options, work for a year or do the ODAP, would have no option other than to quit. That's right. That's right. It's just a different set of facts. There are many different sets of facts that a plaintiff can allege to successfully state a claim. This is just another set of facts. It's not a new law. It's not a new standard. It's not a new body of case law. It's just one way of proving it. And I think if the court was to look at EEOC versus University of Chicago hospitals, it will find the severity of the conduct, the imminence there, was significantly more obvious than it was here. Multiple people were fired or asked to leave because they refused to fire the plaintiff there. And also, a plaintiff comes to work one day and her stuff is packed up on her desk. Also, there's direct evidence that her employer was putting a plan in place to discharge her. There's direct evidence of that. There's no direct evidence of that here. So I think that's a really good analog to this case to show the court why there's not enough to state a constructive discharge claim. I'm well over time. I'm happy to keep going. Thank you, Mr. Haven. Ms. Gaines. Thank you, Your Honors. Just a few quick points. Whether or not there's confusion with what the judge asked with respect to retaliation, I think I said before I sat that it doesn't matter because the judge is actually just moving away from what's required under Rule 8 and the Iqbal Twombly standard. And I think that the judge did what the Supreme Court in Zweigowitz versus Sorama said, don't do. You're asking for more in a complaint than is necessary. And I think if we just look at the complaint itself, as Judge Benjamin stated, on the four corners, it's clear that a retaliation claim has been alleged. And I want to point out... Hold on. I understand your argument there. But it seems like to me, you might imagine a judge... I want to be a little careful about where we're going here. Because you can imagine a judge saying, listen, you need to understand that if you go forward, that you are forgoing the agency award. I'm just trying to provide information to you. That if you go forward, the retaliation is at issue. You might get a new shot at damages, but the retaliation is at issue. Now, maybe the retaliation is not so hard here. So in this case, maybe it looks different. But are you really saying that the court can't do that? Can't say, listen, I'm not sure if you're aware of this labor case, but if you go forward, it's going to put this at issue. And so you're foregoing this prior remedy you got. And I want to make sure you're making that election knowingly and intelligently. The court can say that, but the court didn't quite say that. No, no. I'm not saying the court did say it. You just said they can't ask the question. Oh, no, no, no. I'm not arguing that they asked the right question here. I'm just saying, I want to make clear, from my perspective at least, that they can at least ask the question, right? The judge can call me on the phone, have a hearing, ask me whatever questions he wants. But when we're talking about The judge shouldn't have premised dismissal on whether or not we're putting something at issue. The judge should have just looked at the complaint, tested the allegations of the complaint, and determined if they were sufficient. Clarity is for discovery. This court, and probably every circuit and the Supreme Court, has said when defining Rule 8, the Iqbal Twombly Standard, that they don't have an expectation that a complaint have every single thing and be the clearest thing and be something that Clarence Darrow would have If Mr. Haven and I needed to work together to define the allegations, the facts, that was supposed to happen in discovery. The judge improperly robbed us of that opportunity because he did more than he should have done on a 12B6 motion to dismiss. There are plausible allegations, according to race 2. I wanted to speak to that. I think what my colleague is missing is that the allegation does say that she was treated less favorably than non-African Americans. Outside of the EEOC complaint, that's a clear retaliation, an allegation that races that issue. She identified her Asian counterpart. You would agree that there is a very high standard when it comes to constructive discharge in your hostile work environment claim? Constructive discharge in a harassment plus allegation, yes. I would say that's a high standard because what they're saying is not necessarily a high pleading standard, but you've got to allege something that's more than just basic hostile environment. I mean, in America, the way that aspect of the law has developed is it has to be a crime, basically. You've got to be threatened to be killed, raped, something for it to go under the harassment plus standard. But I think what the 7th Circuit is saying, and what I'm really hoping that this panel will make clear in the 4th Circuit, is that isn't the only way to do it. Do you agree that the Supreme Court in Green v. Brennan and all these other cases say that the constructive discharge requires that the employee's job be made so intolerable, and I'm paraphrasing, but so intolerable that any reasonable employee would have to quit. And whatever the facts are, that's the standard. Whether that's harassment plus or some other factual scenario, that standard is set by the Supreme Court. We can't change that. And I take Judge Benjamin's point to be, like, that's the high bar. Yes, yes, but I think the writing on the wall, the axe is about to fall fits firmly within that intolerable standard. I mean, think about being terminated, especially in a competitive workforce. This is a GS-15. I got a clerk who's sitting over here, right? And when he started, the  right? I mean, it's just a year-long job, right? We wouldn't say that, like, the axe is about to fall, right? I mean, I guess I'm having a little trouble, even if you accept the idea that that's so intolerable that he has no option but to walk out the door right now. Your Honor, I think we do understand that when we're talking about termination, we mean for cause and a negative adverse action. Taking a job... I'm on the imminence, right? This is, like, this is a year from now. Well, imminent does not mean absolute or tomorrow. We also need to closely look at the way the law defines imminent. It comes up frequently, for example, with protective orders. When you say that you have to be threatened, that the threat has to be imminent, it doesn't mean that the person has to be in your face with a knife about to stab you to death. It means that there have to be enough allegations, enough said that makes it seem like this isn't something that's just out of the way, but it's likely to happen. Imminent is not absolute. So she didn't need to be terminated the next day or even the next week for it to be imminent, right? So if you're saying you're going on a terminal detail and that as soon as it's over, you're done, that could fall within the definition of imminent. If you put someone on an ODAP and in 60 days, I don't even meet with you, right? Because that's part of the allegations as well. On an ODAP, you're supposed to actually help the person improve their ostensible poor performance and you're supposed to meet with them weekly. She alleges that for both the letter of concern and the ODAP, he never did that. So that's another allegation that gives rise to the fact that the termination is imminent. Not tomorrow, not the next day, but imminent. And the court does not define imminent as the next day. But I think to your overall point, that concept as the Seventh Circuit has espoused it, does fit squarely within the Supreme Court precedent. It's just that here I don't think the Fourth Circuit, I tried to look, there's nothing where you've ever squarely said that and so I think the judge below was correct to bring this case forward. I would love for you all to say that clearly through this case so that at least we have that as the benchmark and we know we can go forward and then maybe we can argue about what imminent really means once we get before a jury and let them determine. But we're not asking ultimately, imminent might be something, but the ultimate question remains whether the job is made so intolerable that any reasonable employee would resign. And that's the test. The Supreme Court has told us that's the test. We can't change that test. Sure. So if you get terminated rather than quitting, and I think that's why the Seventh Circuit said it in the first place, they're recognizing what's wrong with being terminated. Meaning that you can't mitigate your damages because you might have a hard time getting another job because you were actually fired for cause. And so that it may make more sense to quit. I think that's why the Seventh Circuit, the Tenth Circuit. We say that all the time. These are all these hostile work environment, constructive discharge cases. That same principle would apply in all of those. And we still set the bar really high. I think half of your sister circuits are really trying to say that it doesn't need to be a crime. Intolerable doesn't necessarily mean that if I'm coming to work they call me the N word every day and then I'm afraid they're going to put up a noose and do something to my physical safety. Or it doesn't mean that I've been sexually harassed so much that I feel like this person is going to do something to my physical safety. That's certainly intolerable. I think your sister circuits are trying to say that that's not it. That's not the only thing that makes an environment intolerable. And the fact that the writing is on the wall or the ax is about to drop where you may be terminated, you're going to get fired anyway. So if you quit to try to save yourself, to try to mitigate some damages, it actually cuts off your back pay. Plaintiffs' lawyers say don't quit. But if you do quit because the writing is on the wall, we're going to allow that to come within the rubric of constructive discharge because the conduct is intolerable. The writing is on the wall as was in this case based on the allegations and you're being led to termination by all of these factors then if you quit, we're still going to allow you to be able to come within this body of law. It doesn't have to be that harassment plus. It's another section. I think it may sound like Mr. Haven is right. He's at a disadvantage in the sense that he has to your well-pled facts, he has to accept them at this point. I'll take it. But it seemed like it was some question about let's get this straight in terms of the EEOC, that part. What exactly was that contingent upon in the context of your pleadings? Initially she was supposed to go on the detail and it had been approved. It was just a regular detail. It wasn't terminal. It was a regular detail, not terminal. Once she files the EEOC Can you tell us where I am in the complaint? I'm trying to catch up with you. Which paragraph? I'm trying to piece together where we are given the paragraph 17 is where she's told the detail would not ensue unless she dropped or dismissed her pending EEOC complaint. That part is quite clear. I think you have to start with 14 is where she alleges that she had gone to HR for approval and they approved the one year detail. And then she complained directly to Mr. Finkelstein in HR about the hostile work environment in paragraph 15 and the harassment did not subside and instead he placed her on an ODAP. So that's the opportunity to demonstrate performance. That's what's saying that if you don't do it in 60 days I'm going to terminate you. 16 says it indicated that he was supposed to meet with her weekly but he failed to do so. So that's an allegation. The reasonable conclusion is that he failed to do so because he didn't care. It was just perfunctory and he was going to fire her. And then it says his failure to follow the requirements of the ODAP from the management perspective and the unwarranted nature of his allegations concerning her performance led her to believe that he was setting her up for removal. In fact, in 2019 he told her he could do a terminal detail meaning that her employment would terminate at the conclusion of the detail. But the terminal piece there is not connected to the next paragraph which is drop the EEOC complaint. She's saying the detail that you're asking for is only terminal. And then she says but you can't do that. This is paragraph 17 unless you drop or dismiss the EEOC complaint. Yes. So maybe I'm missing your question. I'm sorry. It was his question. I just was trying to see where we were in the complaint. 17 said that he also added that the detail would not ensue unless your client dropped or dismissed her pending EEOC complaint. Yes. I mean the allegations are stated in a chronology in time as to what happened. I don't know. I mean maybe it's more artful to connect them all and weave them all together. But that's how the it's just basically stating everything that happened in the chronology and then it's all swept in in the actual claims where it explains what the retaliation is about. And it incorporates all of these paragraphs into the actual claim. But yes I mean all of these things are happening in December. He's telling her I'm putting you on an ODAB and then he says hey by the way you can still go on the detail but it's going to be terminal. And then he says and you can't even go on the detail unless you drop your EEOC claim. So I mean he's giving her all kinds of things but I think they all work together to show that this person is doing something to her that he's not supposed to be doing. Right? If she was supposed to go on the detail as she alleged straightforward and had it been approved for she should have just gone on the detail. She should have never been on an ODAB because she should have been on the detail. And then when he put her on the ODAB he's saying I'm going to fire you. I'm not going to meet with you. And she's alleged that. So it doesn't matter. You're on this ODAB but I'm not actually trying to help you improve your performance. I think that's the key. You pled that the ODAB was not going to work because that's what Mr. Havens response was I heard him say, I think I heard him say that no, that was an option. She still could have gone back to the ODAB even if she didn't go on the terminal. But you pled that that was a dead letter too because of the way he had basically abandoned it. That's correct. And again even if she hadn't it's 12B6. That's an argument that he can make to the jury. They might agree with that. But that's not what's supposed to be happening at this stage. This is the initial pleading stage. The courts have never required such a level that seems to be required by Judge Chong when he's dismissing this case. So I think we have to go back to the district court, do some discovery, clarify some of these issues if there is in fact confusion and follow the merits of the case through the procedural process. Thank you very much. Thank you for your time, your honors. Appreciate it. We overworked you both so thank you so much. We're going to come down and greet counsel and then proceed to our next case.
judges: Roger L. Gregory, Julius N. Richardson, DeAndrea Gist Benjamin